UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**GERRARD D. JONES,**

    **Plaintiff,**

v.                                              **Case No: 5:18-cv-78-Oc-41PRL**

**PATRICIA RODGERS, MARK GEIGER and JEFFREY HOWELL,**

    **Defendants.**
_____/

## ORDER

THIS CAUSE is before the Court on a Motion to Dismiss ("Motion," Doc. 36) filed by Defendants Patricia Rodgers, Mark Geiger, and Jeffrey Howell (collectively "Defendants") and Plaintiff's Response thereto (Doc. 37). As set forth below, the Motion will be granted in part and denied in part.

### I. FACTUAL BACKGROUND

Plaintiff filed an Amended Civil Rights Complaint ("Amended Complaint," Doc. 6) pursuant to 42 U.S.C. § 1983. On October 5, 2017, Plaintiff was talking to an unnamed prison staff member while sitting in the hallway of the medical department at Marion Correctional Institution awaiting foot surgery when he overheard a conversation among Classification Supervisor Patricia Rodgers ("Defendant Rodgers"), Assistant Warden Jeffrey Howell ("Defendant Howell"), and Sergeant Mark Geiger[1] ("Defendant Geiger"). (*Id.* at 6). The Defendants were talking about "how stupid" Sergeant Savage was, and then called him over the radio to report to their location. (*Id.*).

---

[1] In the Amended Complaint, Plaintiff lists Defendant Geiger's official position as "Prison Guard." (Doc. 6 at 2). The Defendants' Motion to Dismiss classifies Defendant Geiger's position as "Sergeant." (Doc. 39 at 2).

The Defendants and Savage discussed the deficiencies in disciplinary reports ("DRs") that Savage had prepared and that he needed to correct them so the inmates, referred to as a racial slur, would not win on appeal. (*Id.*). Defendant Rodgers wrote out a list of points that Savage needed to include in the DR "so we can stick the n-----." (*Id.*) Plaintiff had received a pencil and paper from the unnamed staff member and was taking notes of what he had heard. (*Id.* at 7). Defendant Geiger saw Plaintiff writing, confiscated the notes, and sought to put him in confinement, but some unnamed nurses intervened telling Defendant Geiger that Plaintiff was already prepped for surgery and the doctor was waiting. (*Id.*)

Plaintiff was given crutches after he underwent the two-hour procedure and the doctor told him to go back to his dorm and to stay off his foot. (*Id.*). At some point after the surgery Defendant Geiger and Savage accosted Plaintiff, took his crutches, pushed him to Geiger's office, called him a racial slur, berated him about the earlier notetaking, and complained about Plaintiff's anti-gang program.[2] (*Id.*). Plaintiff states that at the request of Defendant Rodgers, Defendant Geiger conjured up false allegations that Plaintiff was in a gang. (*Id.*). Defendant Geiger then forced Plaintiff to stand on his foot with stitches, take off his shirt, and took pictures of Plaintiff's upper body tattoos. Defendant Geiger told Plaintiff he was going to close management and complained that Plaintiff's anti-gang program was going to put him out his job as the institution's gang-officer. (*Id.* at 7-8). Defendant Geiger then told Savage to "Take his black ass fake lawyer ass to fucking confinement." (*Id.* at 8).

Plaintiff also states that at the request of Defendant Rodgers, Defendant Geiger made false PREA[3] allegations against Plaintiff, false reports of Plaintiff extorting inmates, false reports of

---

[2] Plaintiff states that he created a program called IMAGES (Inmates Making A Gang Exit Strategy/Safely/Securely) to help inmates get out of gangs. (Doc. 6 at 7-8).

running a prostitution ring, falsely accused him of being affiliated with gangs, and falsely accused Plaintiff of controlling drugs, cell phones, and money. (*Id.* at 9). Plaintiff claims that Defendants Rodgers and Geiger falsified the close management referral which led to him being placed on close management 2 ("CM II") status, in retaliation for him filing grievances and lawsuits and for his anti-gang program. (*Id.* at 9-12). Plaintiff states that Defendant Rodgers was in charge of the CM II panel that approved the referral she falsified. (*Id.* at 12-13).

Plaintiff claims that Defendants Howell, Rodgers, and Geiger are retaliatory and racist, and treat white inmates more favorably. (*Id.* at 14-16). Plaintiff lists multiple white prisoners that committed severe infractions while incarcerated that were reviewed by the Defendants but not referred to close management. (*Id.*). Plaintiff also states that he provided information that got one of Defendant Rodgers' and Geiger's favorite officers fired, which also led to him being falsely referred to close management. (*Id.* at 16-17).

Plaintiff complains that his ability to appeal his CM II referral was denied because Defendants Rodgers and Howell were on the administrate review panel. (*Id.* at 17-18). Plaintiff further claims that Defendant Howell sabotaged his appeals by withholding documents and delaying the return of his appeal paperwork. (*Id.* at 17-20).

Plaintiff also claims that he is being housed in a cell without adequate drinking water, a leaking toilet, no heat, and no winter clothing. (*Id.* at 20). Plaintiff states that he has been denied visitation, phone calls, personal clothing, and comfort items. (*Id.* at 21). He claims he is a personal prisoner of the Defendants, who brag to other inmates regarding "how they put that n----- Lawyerboy on CM2." (*Id.*).

## II. LEGAL STANDARDS

---

[3] Prison Rape Elimination Act.

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." In determining whether to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009). Nonetheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Generally, in deciding a motion to dismiss, "[t]he scope of the review must be limited to the four corners of the complaint." *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). In the case of a *pro se* action, the Court should construe the complaint more liberally than it would pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980).

### III. DISCUSSION

#### A. First Amendment Retaliation

Plaintiff contends that the Defendants have retaliated against him for filing grievances and lawsuits. Defendants claim that Plaintiff has failed to state a claim upon which relief may be

granted due to his failure to set forth any facts demonstrating acted with any retaliatory motive. (Doc. 36 at 7-9).

"In order to prevail on a civil rights action under § 1983, a plaintiff must show that he or she was deprived of a federal right by a person acting under color of state law." *Griffin v. City of Opa–Locka,* 261 F.3d 1295, 1303 (11th Cir. 2001). Section 1983 "requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation." *Zatler v. Wainwright,* 802 F.2d 397, 401 (11th Cir. 1986). The Eleventh Circuit has held that § 1983 claimants must allege facts in support of their claims with some specificity. *Wilson v. Strong,* 156 F.3d 1131, 1135 (11th Cir. 1998).

"The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." *Farrow v. West,* 320 F.3d 1235, 1248 (11th Cir. 2003). It is well established that a prisoner exercises his First Amendment right when he complains about his conditions of confinement. *Id.* An inmate may maintain a cause of action for retaliation by showing that a prison official's actions were "the result of [the inmate's] having filed a grievance concerning the conditions of his imprisonment." *O'Bryant v. Finch,* 637 F.3d 1207, 1212 (11th Cir. 2011) (internal quotations omitted). To prevail on a retaliation claim, the inmate must establish that: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the official's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech. *Id.*

Plaintiff claims that after Defendant Geiger observed him taking notes of the Defendants' October 5, 2017 conversation he was sent to confinement and some of his legal work went missing. Also, in early October 2017, Plaintiff reported an incident involving one of Defendants Rodgers's

and Geiger's favorite correctional officers that led to the firing of the officer. Plaintiff was then falsely accused of extorting inmates, running a prostitution ring, "controlling drug, cell phones and money" while affiliated with multiple gangs in the prison. These allegations were then cited in the close management referral prepared by Defendant Rodgers. Defendants Rodgers and Howell, as part of the panel reviewing the referral, approved Plaintiff's CM II classification, despite knowing that facts of the referral were false. Based on Amended Complaint's allegations, the Court concludes that Plaintiff has stated a claim of retaliation that is plausible on its face. *See Logan v. Hall*, 604 F. App'x 838, 841 (11th Cir. 2015) (Florida state prisoner sufficiently pled § 1983 claim against prison officials based on First Amendment retaliation by alleging that, in retaliation for his filing of lawsuits and grievances, prison officials deliberately falsified reports, which resulted in his spending excessive time in disciplinary and close-management confinement and losing his yard privileges.)

### B.    Eighth Amendment[4] Prison Conditions

Although the Eighth Amendment's prohibition on cruel and unusual punishment applies to the conditions of confinement, "the Constitution does not mandate comfortable prisons." *Chandler v. Crosby,* 379 F.3d 1278, 1289 (11th Cir. 2004). Thus, "[i]f prison conditions are merely restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* (quotation omitted). However, conditions that deprive inmates of the "minimal civilized measures of life's necessities" are violative of the Eighth Amendment. *Hudson v. McMillan,* 503 U.S. 1, 9 (1992). The Supreme Court developed a two-part test to analyze conditions-of-confinement claims. First, under the objective component, the condition complained

---

[4] The Eighth Amendment applies to the states through the Fourteenth Amendment. *Rhodes v. Chapman,* 452 U.S. 337, 344–45 (1981).

of must be sufficiently serious or extreme, such that it "poses an unreasonable risk of serious damage to [the plaintiff's] future health or safety." *Chandler,* 379 F.3d at 1289 (quotation omitted). Second, a plaintiff must show that the defendants acted with deliberate indifference. *Id.* "[D]eliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Farrow,* 320 at 1245 (internal quotation omitted). Prison officials must "be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Chandler*, 379 F.3d at 1290.

Here, Plaintiff contends that he was confined in a cell "with no adequate drinking water, a leaking toilet, no working heater (during bitter cold), [and] no winter clothing" in violation of his Eighth Amendment rights. Plaintiff's Amended Complaint fails to allege facts to satisfy either the objective "substantial risk of serious harm" component or the subjective "deliberate indifference" component for showing an Eighth Amendment violation. Plaintiff's claims are not the extreme prison conditions that create a substantial risk of serious harm. *Id.* at 1289, 1297-98. Additionally, Plaintiff does not claim that any of the Defendants knew of the conditions he complains of. Therefore, Defendants are entitled to dismissal of Plaintiff's Eighth Amendment claim.

### C.     **Fourteenth Amendment Due Process**

A Section 1983 action alleging a procedural due process violation requires proof of three elements: "deprivation of a constitutionally-protected liberty or property interest; state action; and constitutionally-inadequate process." *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994). The Eleventh Circuit Court of Appeals has identified two situations in which a prisoner - already deprived of liberty in the traditional sense - can be further deprived of liberty such that procedural due process protections are required: (1) when there is a "change in the prisoner's conditions of

confinement so severe that it essentially exceeds the sentence imposed by the court[ ]"; and (2) when the State has consistently given a benefit to prisoners, usually through a statute or administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Kirby v. Siegelman*, 195 F.3d 1285, 1291 (11th Cir. 1999) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

In his Amended Complaint, Plaintiff details various instances in which conditions in CM II vary significantly from those in general population. He asserts that he has been denied visitation, phone calls, personal clothing, winter clothing, and comfort items. (Doc. 6 at 20, 21). Thus, at this stage of the litigation, Plaintiff alleges sufficient facts to support his claim that the conditions of CM II impose the type of atypical and significant hardship to trigger a state-created liberty interest. *See Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) (finding that, while one adverse condition standing alone may not be sufficient to create a liberty interest, the aggregation of conditions in solitary confinement may impose an atypical and significant hardship); *Bass v. Perrin*, 170 F.3d 1312 (11th Cir. 1999) (protected liberty interest found in yard time where close management inmates could be deprived of all outdoor exercise time); *Wallace v. Hamrick*, 229 F. App'x 827 (11th Cir. 2007) (liberty interest found where plaintiff was in administrative segregation for 28 days with no hot water, no ventilation, and no opportunity for exercise while awaiting a hearing on his disciplinary violations).

Nevertheless, while Plaintiff plausibly alleges that he suffered a deprivation of liberty, he has not plausibly alleged that he received inadequate process. "The minimum requirements of due process for prisoners facing disciplinary action ... are (1) advance written notice of the charges; (2) a written statement of the reasons for the disciplinary action taken; and (3) the opportunity to call witnesses and present evidence, when consistent with institutional safety and correctional goals."

*Bass*, 170 F.3d at 1318. A prisoner placed in close management for non-disciplinary reasons, however, is merely entitled to "some notice of the charges against him and an opportunity to present his views." *Sheley v. Dugger,* 833 F.2d 1420, 1426 (11th Cir. 1987) (quoting *Hewitt v. Helms,* 459 U.S. 460, 476 (1983). Due process also requires that prisoners held in close management be given "some sort of periodic review of the[ir] confinement." *Id.*

Here, Plaintiff fails to allege that he was afforded constitutionally-inadequate process. The Amended Complaint does not allege that prison officials have failed to provide him with adequate notice, a statement of reasons for his placement in close management, an opportunity to present evidence, or periodic review of his status. Accordingly, the minimal requirements of due process that are applicable to prison disciplinary proceedings have been satisfied in this case. Moreover, Florida's prison regulations are not constitutional mandates. *See Magluta v. Samples*, 375 F.3d 1269, 1279 n. 7 (11th Cir. 2004).

### D. Fourteenth Amendment Equal Protection Claim

To state a claim under the Equal Protection Clause, a prisoner can allege that "(1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest," such as race, religion, or national origin. *Smith v. Reg'l Dir., Fla. Dep't of Corr.*, 368 F. App'x 9, 12 (11th Cir. 2010) (per curiam) (quoting *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001) (per curiam)); *see also Jackson v. Brewton*, 595 F. App'x 939, 943 (11th Cir. 2014) (per curiam). Here, Plaintiff claims that the Defendants referred him to close management because he is black but have voted against placing white inmates in close management. Plaintiff lists seven white inmates he claims are in gangs and have "committed documented law violations and endangered the security/order of Marion C.I." that were not recommended for close management by the Defendants. *See* Doc. 6

at 14-16. In contrast, Plaintiff states that he has no write-ups nor has he committed any crimes. Plaintiff states that he is in close management because he is "a n----- writ-writer." *See id.* at 16. Based on Amended Complaint's allegations, the Court concludes that Plaintiff has stated an equal protection claim that is plausible on its face.

## IV. CONCLUSION

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. The Defendants' Motion to Dismiss (Doc. 36) is **GRANTED** in part and **DENIED** in part. The Motion is **GRANTED** with regard to Plaintiff's Eighth Amendment prison condition claim and the Fourteenth Amendment due process claim. The motion is **DENIED** with regard to Plaintiff's First Amendment retaliation claim and the Fourteenth Amendment equal protection claim.

2. The Defendants shall, pursuant to Fed. R. Civ. P. 12(a)(4), file an Answer on or before September 6, 2019.

**DONE** and **ORDERED** in Orlando, Florida on August 23, 2019.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party